**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| Bruce Corey, | ) | **CASE NO. 1:15 CV 1736** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Sedgwick Claims Management Services, et al., | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>INTRODUCTION</u>

This matter is before the Court upon the parties' cross-motions for judgment on the administrative record (Docs. 39[1] and 40). This case arises under the Employee Retirement Security Act of 1974 ("ERISA"). For the reasons that follow, defendants' motion for judgment on the administrative record is GRANTED, and plaintiff's motion is DENIED. Also pending before the Court are Plaintiff's Motion for Leave to File Reply Brief, which is GRANTED, and Defendant's Motion to Strike, which is GRANTED.

---

[1]      Plaintiff's motion, entitled "Plaintiff's Brief on the Record," is not captioned as a motion, but the Court will treat it as such.

1

## FACTS

Plaintiff was a machine operator at Eaton Corporation from July 20, 1987, until April of 2014. Defendants are Eaton Corporation Disability Plan for U.S. Employees (the "Plan") and Eaton Corporation Health and Welfare Administrative Committee (the "Benefits Committee"). As an employee, plaintiff is entitled to participate in the Plan.

### A. Plan Terms

The Plan consists of a general plan description, referred to as the Wrap Document, and Operative Documents, which include the Summary Plan Descriptions ("SPDs") for the Short and Long Term Disability Plans. The SPDs for both plans designate the Benefits Committee as the Plan Administrator. Sedgwick Claims Management Services, Inc. ("Sedgwick") is the third party that administers benefits claims and appeals.[2] The Wrap Document provides that the "Plan Administrator and its delegate...shall have the sole and absolute authority and responsibility for construing and interpreting the provisions of the Plan, subject to any applicable requirements of law." (AR 9). Similarly, the Short and Long Term Disability Plan SPDs both confer discretion on the Plan Administrator: "The Plan Administrator and/or Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to, any disputed or doubtful terms." (AR 1080, 1102).

A Plan participant is eligible for short term disability benefits "if an occupational or non-occupational illness or injury prevents [the participant] from performing the essential duties of [his or her] regular position with the Company or the duties of any suitable alternative position with the Company." (AR 1087). The participant must also be "under the care of a health care

---

[2]     The Court dismissed Sedgwick as a defendant on February 29, 2016.

practitioner who verifies, to the satisfaction of the Claims Administrator," that the participant is unable to perform his or her essential duties because of the disability. (AR 1089).

To be eligible for long term disability benefits, a participant must have a "covered disability" that prevents him from working for longer than six months and be under the continuous care of a physician. (AR 1063). The Long Term Disability Plan defines "covered disability" as follows:

> You are considered to have a covered disability ... under the Plan if, as the result of an occupational or non-occupational illness or injury:
>
> During the first 24 months, including any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the company, or the duties of any suitable alternative position with the Company; and
>
> Following the first 24 months, you are totally and continuously unable to engage in any occupation or to perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience  at Eaton or elsewhere.

(AR 1063).[3]

Both the Short and Long Term Disability Plans require a participant to provide objective findings of a disability to substantiate the claimed period of disability. (AR 1063, 1091). Both Plans define "objective findings" as findings that "your health care practitioner observes through objective means, not your description of the symptoms." Objective findings include:

- • Physical examination findings (functional impairments/capacity);
- • Diagnostic test results/imaging studies;
- • Diagnoses;
- • X-ray results;

---

[3]    Under both the Short and Long Term Disability Plans, Eaton has the sole discretion to determine the availability and suitability of alternative positions at Eaton.

3

• Observation of anatomical, physiological or psychological abnormalities and
• Medications and/or treatment plan.

(AR 1063, 1091).

### B.  Plaintiff's STD Benefits

Plaintiff's physician, Dr. John Tumbush, diagnosed him with cluster headaches on February 14, 2014. Dr. Tumbush noted that the headaches were "incapacitating," occurred every four hours, and precluded plaintiff from working or operating machinery. (AR 394). Plaintiff was treating the headaches with 100 percent oxygen, which Dr. Tumbush noted he would not be able to do at work. (AR 34). As a result, the doctor stated that plaintiff "was not able to return to work until headache cycle is resolved." Plaintiff filed a short term disability claim, which Sedgwick approved from February 10, 2014, through March 2, 2014. Plaintiff returned to work at full duty on March 3, 2014. (AR 56).

Plaintiff stopped working on April 28, 2014, and again sought short term disability benefits. Plaintiff's physician, Dr. Mark Rorick, diagnosed him with cluster headaches and issued a "Certificate to Return to Work," which stated that plaintiff could return to work on May 7, 2014, with no restrictions. (AR 60). Sedgwick approved plaintiff's short term disability benefits claim for the period April 28, 2014, through May 7, 2014. (AR 109).

On May 12, 2014, Dr. Rorick provided Sedgwick with a Family and Medical Leave Act certification form and his report from plaintiff's examination on May 2, 2014. In these documents, Dr. Rorick noted that plaintiff's pain from the headaches was "very severe and incapacitating," that plaintiff was unable to perform his work duties because he could not drive to and from work while he was suffering a headache, and that plaintiff was taking multiple

4

medications for his condition. (AR 96, 101, 105). Dr. Rorick's visit summary, however, stated that plaintiff "will return to work on May 7th." (AR 105).

Sedgwick denied plaintiff's claim for a continuation of short term disability benefits after May 7, 2014. (AR 123). The denial letter stated that the claim was denied because it did not meet the Short Term Disability Plan provisions requiring objective findings of a disability and the requirement that a physician verify to Sedgwick's satisfaction that plaintiff could not perform the essential duties of his position because of his disability. It informed plaintiff that the denial was based on a review of the documentation that Dr. Rorick had provided and stated:

> The received medical information does not document the severity of your condition(s) to support STD benefits effective May 8th 2014. Medical records obtained for date of service May 5th 2014 indicated that Dr. Rodrick has released you to return to work on May 7th 2014. At this time objective clinical findings to support the severity of your condition as of May 7th 2014 and beyond have not been received.

(AR 118).

On May 27, 2014, plaintiff requested a First Level Appeal. In support of his appeal, plaintiff submitted a summary of his examination by Dr. Eric Baron, a neurologist. Dr. Baron's visit summary indicated that plaintiff had cluster headaches, but it did not state whether plaintiff was unable to work because of the headaches. (AR 125-132). Plaintiff also submitted a return-to-work form dated June 5, 2014, from Dr. Rorick. Dr. Rorick stated that it was "unknown" when plaintiff could return to work because he suffered from "incapacitating cluster headaches" that caused nausea, dizziness, and occasional loss of consciousness. He noted that, once plaintiff returned to work, he would be able to perform his regular duties "as long as headaches are gone. During cluster headache exacerbation, he needs to be off work." (AR 135). Dr. Rorick also

5

submitted medical records from his examination of plaintiff on June 12, 2014. In these records, Dr. Rorick concluded that plaintiff "cannot return to work at this time" and noted that plaintiff had reported having three to four headaches of varying duration per day, with an average pain score of four out of ten, and that the pain is made worse by noise and light. (AR 149, 152).[4] Dr. Rorick stopped plaintiff's prescription for prednisone, but did not explain why. (AR 152).

As part of its first-level review, Sedgwick sent plaintiff's file to Dr. Steven Graham, a board-certified neurologist, for review. Dr. Graham reviewed plaintiff's entire claim file and also spoke with Dr. Rorick on the telephone. He unsuccessfully attempted to contact Dr. Baron three times between June 19 and 20; he left a message each time and twice explained the nature of his call, once to a nurse and once to a receptionist. Dr. Rorick reported to Dr. Graham that plaintiff suffered from cluster headaches, often more than once a day, despite taking prednisone, sumatriptan, and oxygen therapy.[5] He noted that the cluster headaches last approximately 45-60 minutes and that it is difficult for plaintiff to function when he has a headache. He did not relate any adverse side effects from the medication and did not mention any neurological exam abnormalities. (AR 154).

Based on Dr. Graham's review of the file and his conversation with Dr. Rorick, he concluded that plaintiff was "not disabled from his regular unrestricted job as of 05/07/14." He

---

[4]    On May 2, 2014, when Dr. Rorick noted that plaintiff was returning to work on May 7, plaintiff had reported an average pain score of eight out of ten.

[5]    Defendants' own notes about plaintiff's claim state that a "major drawback of oxygen [therapy] is the need to carry an oxygen cylinder and regulator." (AR 499-500). The notes also identify that plaintiff's headaches are worsened by noise, bending, and exertion. (AR 504). Plaintiff was a machine operator, which is rated as heavy exertion work (AR 438, 458).

noted that plaintiff's primary diagnosis is cluster headaches, which are episodic in nature and may require medication for control. He acknowledged that "[s]ignificant impairment in activities do occurred [*sic*] during cluster headache attacks." But he noted that "this does not result in any neurological, physical exam abnormalities," that "[n]eurological examinations have been normal in the records supplied," and that "[o]ther than complaints of headache pain preventing return to work, there are no physical abnormalities, which would prevent return to work." He concluded: "Therefore, from a neurological perspective, the medical evidence does not support that there is a neurological disability; the employee is not disabled from his regular unrestricted job as of 05/07/2014 to return to work." (AR 156).

On July 7, 2014, Sedgwick upheld its decision to deny plaintiff's short term disability claim after May 7, 2014. The denial letter informed plaintiff of the relevant Plan provision and that the decision was based on Sedgwick's review of the entire claim file, including the reports from Drs. Rorick, Baron, and Graham. The letter contained a summary of plaintiff's diagnosis and then stated that "[t]here are no neurological or physical examination abnormalities noted." It concluded: "As there are no objective findings contained in the medical documentation that support an impairment that would preclude you from performing your job duties as of May 7, 2014, we have no alternative than to reaffirm the decision to deny benefits for the period of May 7, 2014 through your return to work date." (AR 159). The letter notified plaintiff of his right to appeal and informed him that he could submit additional medical evidence in support of the appeal. (AR 159). It also stated that, upon written request and free of charge, plaintiff would be "provided reasonable access to, and copies of, all documents, records, and other information relevant to [his] claim for benefits." (AR 159).

7

Plaintiff requested a Final Level Appeal on August 1, 2014. According to the Plan, the review on appeal is a "'fresh' look at the claim [by the Plan Administrator] without deference" to Sedgwick's denial decision. (AR 1024). Additional evidence was available for the final appeal. Specifically, Dr. Baron provided more documents related to his examination of plaintiff on May 19, 2014. In these documents, Dr. Baron noted that "the condition for which [plaintiff] [sought] leave" was "chronic cluster headache with frequent exacerbation which impair working ability." Dr. Baron indicated that plaintiff's condition would cause periodic flare-ups that would prevent him from performing his job functions and that it would be necessary for him to be absent from work during the flare-ups. (AR 285). He estimated that the flare-ups would occur once or twice a week and last 0-24 hours. Nevertheless, Dr. Baron also noted that plaintiff's condition did *not* render him unable to perform any of his job functions. (AR 284). Moreover, he noted that the plaintiff had not been incapacitated and would not be incapacitated "for a single continuous period of time, including any time for treatment and recovery." (AR 285).

Plaintiff also submitted the records of his examination on July 30, 2014, by Dr. Andre Machado, a neurologist with the Cleveland Clinic. Plaintiff reported to Dr. Machado that his headaches occurred two to six times a day and that the severity of his headaches could go to a ten on a zero to ten scale but were an average of five. Plaintiff described his pain level as "moderate." Dr. Machado noted that the plaintiff's headaches were located in his right jaw, forehead, and temple, and radiated posteriorly to the occipital region. Imitrex typically abated the headaches within two to three minutes, but Dr. Machado indicated that plaintiff was trying to reduce his use of the medication because he experienced associated chest pain. Plaintiff also reported using supplemental oxygen two to three times a day, which usually helped if he did it

early enough, and that prednisone had worked well in the past. During the visit, Dr. Machado performed a focused neurologic exam. Most of the results of this exam appear to be normal, but plaintiff highlights the doctor's notes regarding the trigeminal nerve ("CN V"). The neurology report states: "CN V: Diminished sensation to pinprick in the entire right side of the face, diminished to light touch in right cheek and jaw, but normal in right forehead, masseter 5/5." (AR 541-42). Dr. Machado concluded that plaintiff had a "history of chronic, severe cluster headaches." (AR 542). Although Dr. Machado stated that "[plaintiff] reports associated disability and [that he] has not been able to work due to the pain in recent months," the doctor did not reach any conclusions about whether the headaches rendered plaintiff disabled or unable to perform his duties at Eaton. (*Id.*).

Finally, the Plan Administrator asked a physician from an independent medical review organization, Medical Review Institute of America ("MRIoA"), to conduct a file review. The physician is certified in general neurology but defendants have not identified him by name because MRIoA's policy is to keep the names of its reviewing physicians confidential. (AR 1112). The physician reviewed plaintiff's job description, the medical records of his treating physicians, the results of neurological tests, and Dr. Graham's review. He also attempted to contact Drs. Rorick and Baron on September 10, 11, and 12. Each time, he left a message with his name and reason for the call but was unsuccessful in reaching them. Dr. Machado declined to speak with the reviewer because plaintiff "was being seen only for the occipital nerve stimulator and headaches." (AR. 1107). The reviewing physician acknowledged that plaintiff has a history of cluster headaches that occur two to six times a day, but noted that he takes Imitrex and oxygen to abort the headaches and that he is asymptomatic between headaches. He also indicated that

"there is no evidence of any side effects from medication that would prevent [plaintiff] from doing his job." He concluded that there were "no objective findings that would support the presence of an impairment that would result in any restrictions or limitations" and "no objective evidence that [plaintiff] is unable to perform his job as of 5/7/14 to the present." (AR 1109-1110).

The Plan Administrator conducted its review of plaintiff's claim and issued a denial letter on September 26, 2014. The letter identified the relevant plan provisions (e.g., definition of "covered disability" and requirement of objective findings) and informed plaintiff that "[t]he substantial weight, of the medical documentation provided by you, your treating health care providers and the independent physician reviewers, supports the conclusion that for the time period from May 7, 2014 to present your disability is not covered as required by the Plan." (AR 551). The letter noted that the review by the Plan Administrator had been a "fresh" look at the evidence without any deference to the prior denial decisions. It also informed plaintiff that he could request, free of charge, any documents, records, or other information that were submitted or considered in the benefits determination, and explained that he had a right to file a civil action under ERISA. (AR 552).

### C. Plaintiff's Request for a Long Term Disability Benefit Application

One month later, plaintiff called to request a long term disability information package from the Claims Administrator. The Claims Administrator informed plaintiff that he was not eligible for long term disability benefits because his short term disability benefit claim had been denied. (AR 686). Plaintiff responded that he "just wanted to have the packet." The Claims Administrator informed plaintiff that "we do not just send out the packets and if there is

something about LTD that he needed to know he could ask me or look in his handbook." (AR 686).

### STANDARD OF REVIEW

Normally, a district court applies a *de novo* standard of review to a plan administrator's denial of benefits. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). But when a plan administrator is given discretionary authority to determine eligibility for benefits or to construe the plan terms, the court applies "the highly deferential arbitrary and capricious standard of review." *Id.* (internal quotations omitted). Here, the Plan vested the Plan Administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan.

The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action....When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Id.* at 877. A federal court, however, may not merely "rubber stamp[]" the administrator's decision. *Moon v. UnumProvident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Instead, it must consider the evidence and determine if the decision was based on a "principled reasoning process" and "substantial evidence." *Evans*, 434 F.3d at 876. "[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Eergy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). In evaluating a plan administrator's decision, the court's review is limited to the administrative record, and its job is to determine whether, in light of the record as a whole, the explanation for the decision to deny benefits is rational. *Moon*, 405 F.3d at 381; *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

11

The Sixth Circuit recognizes that "a conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits." *Evans*, 434 F.3d at 876. The conflict of interest does not displace the arbitrary and capricious standard. Instead, it is a factor that the court considers when deciding if the administrator's decision was arbitrary and capricious. *Id.* In addition to the existence of any conflicts of interest, the Sixth Circuit considers these other factors in an arbitrary and capricious review: the quality and quantity of the medical evidence; whether the administrator considered any disability finding by the Social Security Administration; and whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant. *Fura v. Fed. Exp. Corp. Long Term Disability Plan*, 534 Fed. Appx. 340, 342 (6th Cir. 2013). Applying these factors, defendants' denial of STD benefits was not arbitrary and capricious.

### ANALYSIS

#### A. Denial of Short Term Disability Benefits

##### 1. Quality and Quantity of the Medical Evidence

Courts must evaluate the quality and quantity of the medical evidence and the opinions on both sides in reviewing ERISA claims. *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009). In conducting this review, a plan's requirements bind participants and the court. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007). In this case, plaintiff is bound by the Plan's requirement that he produce "objective findings" of a disability, which include findings that his health care providers "observe[] through objective means, not [his] description of the symptoms."

The Sixth Circuit has consistently recognized that "[g]enerally, when a plan administrator

12

chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the administrator's decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). In evaluating competing physicians' opinions, a plan administrator is not required to accord special weight to a claimant's treating physician; "nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965 (2003). Plan administrators, however, "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.*

Here, the quality and quantity of the evidence show that defendants' denial of plaintiff's short term disability benefits claim was not arbitrary and capricious. To be eligible for short term disability benefits, plaintiff had to show, with objective findings, that his headaches prevented him from performing the essential duties of his regular position at Eaton or the duties of any suitable alternative position. The Plan Administrator's determination that plaintiff failed to produce such objective findings is supported by several physicians' opinions. Both of the independent physician file reviewers determined that plaintiff had no neurological abnormalities and that the headaches did not render him unable to perform his regular duties. Moreover, in Dr. Baron's summary of his examination of plaintiff, he indicated that, while plaintiff's headaches would cause periodic flare-ups that prevented him from performing his job functions, plaintiff had not been incapacitated, nor would he be incapacitated "for a single continuous period of

time, including any time for treatment and recovery." Ultimately, Dr. Baron concluded that plaintiff's condition did not render him unable to perform any of his job functions. These conclusions alone are evidence that the Plan Administrator's decision was based on substantial evidence and a reasoned explanation. *McDonald*, 347 F.3d at 169 (6th Cir. 2003).

It is true that Dr. Rorick's June 5, 2014 return-to-work form stated that it was "unknown" when plaintiff could return to work because his headaches were "incapacitating." But Dr. Rorick's conclusion regarding the nature of plaintiff's headaches is based exclusively on plaintiff's self-reported symptoms regarding the severity and frequency of his pain. *Brown v. Fed. Exp. Corp.*, 610 Fed. Appx. 498, 504 (6th Cir. 2015) (holding that administrator's determination that plaintiff's subjective reports of pain and fatigue did not constitute objective evidence as required by the plan was not arbitrary and capricious). As defendants point out, it is also curious that Dr. Rorick released plaintiff to return to work on May 7, 2014, when plaintiff reported a pain level of eight out of ten, yet he changed his opinion several weeks later and determined that plaintiff was unable to return to work even though his average pain level had dropped to four out of ten.

Plaintiff argues that defendants' conclusion that no objective evidence of disability exists is inconsistent with the Plan's definition of "objective findings," which includes medication and treatment plans as examples of objective findings. There is no dispute that plaintiff was on several forms of medication and that he was receiving treatment for his chronic headaches. But the record does not support a finding that this medication or any treatment plan prevented plaintiff from performing the essential duties of his position, *i.e.,* rendered him disabled under the

14

Plan's definition.[6] In fact, the evidence is to the contrary. Indeed, Dr. Graham noted in his report that Dr. Rorick did *not* relate any adverse side effects from the medication, and the MIRoA physician specifically found that the medications did not interfere with plaintiff's ability to work. To the contrary, the evidence suggests that the medication was often successful in abating the headaches, sometimes quite quickly. Dr. Rorick's notes from his May 2, 2014 examination of plaintiff indicate that prednisone alleviated plaintiff's headaches. On July 30, 2014, Dr. Machado similarly noted that "prednisone ... works well." He also noted that Imitrex typically abated the headaches within two to three minutes, that a recent greater occipital nerve block had provided headache relief for seven to ten days, and that oxygen two to three times per day "usually helps if [plaintiff] does it early enough." Though plaintiff experienced some chest pain with Imitrex and oxygen was difficult to administer at work, the record does not support that these, or other medications, rendered him unable to perform his duties.

Plaintiff also cites Dr. Machado's notes regarding plaintiff's trigeminal nerve as evidence of objective findings of a disability. Dr. Machado reported that plaintiff had "diminished

---

[6]     Plaintiff apparently interprets the Plan to mean that any medication constitutes objective evidence of a disability, whether or not the medication causes side effects that render a claimant unable to perform the essential functions of his or her position. On the other hand, defendants implicitly interpret the Plan to mean that medication only constitutes objective evidence of a disability if it renders the claimant unable to perform his or her position. The Plan Administrator had discretion to interpret all Plan terms, and its interpretation is not unreasonable given that the ultimate issue in determining whether a claimant is entitled to benefits is whether he or she is unable to perform the essential duties of his or her position. Other courts reviewing Eaton's disability plan have considered the side effects of a claimant's medication in determining whether the medication constituted objective evidence of a disability under the plan. *See, e.g., Scott v. Eaton Corp. Long Term Disability Plan*, 454 Fed. Appx. 154, 158, 161 (4th Cir. 2011); *McGruder v. Eaton Corp. Short Term disability Plan*, 2006 WL 3042798,at **10, 13 (D.S.C. Oct. 23, 2006).

15

sensation to pinprick in the entire right side of the face, diminished to light touch in right cheek and jaw, but normal in right forehead, masseter 5/5." To support his argument that this notation is objective evidence of a disability, plaintiff relies on evidence outside the administrative record, specifically, a medical journal article and a fact sheet from the National Institute of Health regarding the trigeminal nerve. As an initial matter, the Court grants defendants' Motion to Strike plaintiff's new evidence because the Court's review is limited to the material in the administrative record at the time the Plan Administrator made its decision denying plaintiff's benefits. *See Evans v. Metro Life Ins. Co.*, 190 Fed. App'x 429, 434 (6th Cir. 2006). Moreover, as defendants point out, Dr. Machado's report does not connect plaintiff's diminished sensation in his trigeminal nerve to plaintiff's headaches or to his ability to work. In fact, while Dr. Machado stated that "[plaintiff] *reports* associated disability and [that he] has not been able to work due to the pain in recent months," the doctor did not reach any conclusions about whether the headaches rendered plaintiff disabled or unable to perform his duties at Eaton. Nor did any of plaintiff's other treating physicians conclude that this diminished feeling caused or exacerbated plaintiff's cluster headaches or affected his ability to work. Contrary to plaintiff's assertion, the MIRoA neurologist did not "cherry pick" which evidence he or she relied on in concluding that the record contained no objective evidence that plaintiff was unable to perform his job. While the neurologist did not specifically mention the notation regarding the trigeminal nerve, he reviewed Dr. Machado's report and noted that the "examination revealed normal mental status, cranial nerve, motor, cerebellar and reflex examinations." (AR 1108). In short, a conclusion that Dr. Machado's notation regarding plaintiff's trigeminal nerve constitutes objective evidence of a disability would be based on mere conjecture.

16

Finally, plaintiff complains that, although the MIRoA neurologist accepted that plaintiff had "debilitating headaches" two to six times a day, defendants never ordered a vocational analysis to determine plaintiff's ability to perform his duties in light of the symptoms from his headaches. First, plaintiff mischaracterizes the neurologist's statement in his report. The neurologist did not state that the headaches were "debilitating"; he stated only that "th[e] patient has a history of cluster headaches that are occurring on a daily basis.... In between attacks, which occur two to six times per day, he is asymptomatic." Second, the severity of plaintiff's headaches is supported in the record only by plaintiff's own subjective complaints. Third, nothing prohibited plaintiff from seeking his own vocational analysis. Lastly, plaintiff cites no case law that would require the Plan Administrator to perform a vocational analysis, particularly in light of a record containing substantial evidence that plaintiff was not disabled according to the Plan's definition.

### 2.  Conflict of Interest

As noted above, an inherent conflict of interest exists when a plan administrator both pays benefits and is vested with discretion to determine eligibility for benefits. Such a conflict "prove[s] more important…where circumstances suggest a higher likelihood that it affected the benefits decision." *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). When a claimant "offers more than conclusory allegations of bias," a court should give greater weight to the conflict. *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009). Here, the record is devoid of any evidence that the conflict affected the Plan Administrator's determination that plaintiff's headaches did not render him unable to perform the regular functions of his job. Rather, as discussed above, the benefits determination was based on a

17

thorough review of the record, which included substantial evidence that plaintiff's condition was not objectively disabling. *See Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311-312 (6th Cir. 2010) (finding that conflict did not render decision arbitrary and capricious where the administrator "provided a thorough review of the record and there [was] no indication that the review was improperly influenced by the inherent conflict of interest").

### 3. File Review

The Sixth Circuit has consistently held that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Still, "an administrator's decision to conduct a file-only review might raise questions about the benefits determination, particularly where the right to conduct a physical examination is specifically reserved in the plan. *Judge v. Metropolitan Life Ins.* Co., 710 F.3d 651, 663 (6th Cir. 2013). In evaluating the propriety of an administrator's reliance on a file review, a court should consider whether the file review takes into account the employee's entire file, provides reasons for rejecting the opinions of treating physicians, and makes credibility determinations. *Id.*; *Calvert*, 409 F.3d at 296-97; *Fura v. Fed. Exp. Corp. Long Term Disability Plan*, 534 Fed. App'x 340, 343 (6th Cir. 2013).

Here, the Plan reserves the right to conduct a physical examination, but the file review conducted by the two independent neurologists is of the kind that the Sixth Circuit deemed acceptable in *Judge*. Like in *Judge*, the neurologists reviewed all of the evidence in the file, made no credibility determinations about plaintiff, and made note of where plaintiff's treating physicians' reports lacked objective medical evidence. *See Judge*, 710 F.3d at 663. Indeed, as plaintiff notes, the reviewers accepted plaintiff's statements about the severity and frequency of

18

his headaches. In coming to a different conclusion than plaintiff's treating physicians about whether he was disabled, however, the reviewers explained that: the results of his neurological examinations were normal; his record showed no evidence of physical abnormalities other than his own complaints of headache pain; there was no evidence of any side effects from medication that would prevent him from doing his job; some medication had been successful in abating the headaches; and, ultimately, there was no objective evidence in the record to support a finding of disability. Moreover, both reviewers made reasonable attempts to talk with plaintiff's treating physicians, calling several times and leaving messages about the nature of their phone calls, and, in fact, Dr. Graham spoke with Dr. Rorick, who did not report any neurological exam abnormalities or adverse side effects from medication. For these reasons, it was not arbitrary and capricious for the Plan Administrator to rely on the file review in making its determination that plaintiff was not entitled to short term disability benefits.

### 4. Social Security Determination

There is no evidence in the record of any disability finding by the Social Security Administration.

For the foregoing reasons, the Court concludes that defendants' decision to deny plaintiff short term disability benefits was not aribitrary and capricious because it gave due weight to plaintiff's evidence and was supported by a deliberate, principled reasoning process and substantial evidence.

### B. Denial of Long Term Disability Benefits

Plaintiff argues that defendants wrongfully denied him long term disability benefits when they refused to provide him with the long term disability application. As noted above, "the

19

ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Eergy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). Here, defendants' decision to deny plaintiff long term disability benefits was not arbitrary and capricious. To be eligible for long term disability benefits, a participant must have a "covered disability" that prevents him from working for longer than six months and be under the continuous care of a physician. A participant has a covered disability under the Plan, if, as the result of an illness or injury, during the first twenty-four months, the participant is "totally and continuously unable to perform the essential duties of [his or her] regular position with the company or the duties of any suitable alternative position with the Company." Once the Plan Administrator determined that plaintiff was not entitled to short term disability benefits after May 7, 2014, plaintiff necessarily failed the test for long term disability benefits because he could not show that he had a covered disability that prevented him from working for longer than six months. Thus, even if it would have been more appropriate for the defendants to provide him with a copy of the application packet, defendants did not wrongfully deny him long term disability benefits.

### C.  Adequacy of the denial letter

Plaintiff complains that the final denial letter is deficient because it contains "no actual explanation or analysis." (Pl.'s Br. at 21). 29 U.S.C. § 1133 requires that a plan administrator provide adequate notice to the claimant of the specific reasons for a claim denial and an opportunity for the claimant to have the decision reviewed by the fiduciary. The Sixth Circuit applies a "substantial compliance" test in determining whether an administrator has complied

with the notice requirements of § 1133. This test "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 881 (6th Cir. 2007) (quotations omitted). If, as a whole, the communications between the administrator and participant fulfill § 1133's purposes, an administrator's decision will be upheld even where the "particular communication does not meet those requirements." *Id.* (quotations omitted).

When all of the communications between defendants and plaintiff are taken into account, the Court finds that they meet § 1133's notice requirements. The initial denial letter informed plaintiff that his claim was denied because he did not meet the Short Term Disability Plan provisions requiring objective findings of a disability or the requirement that a physician verify to Sedgwick's satisfaction that plaintiff could not perform the essential duties of his position because of his disability. It informed plaintiff that the denial was based on a review of the documentation that Dr. Rorick had provided, summarized the deficiencies in Dr. Rorick's report, and noted that Dr. Rorick had released plaintiff to work on May 7, 2014. The letter also explained the process for appealing and included an appeal form. (AR 118). The initial appeal denial letter informed plaintiff of the relevant plan provisions and noted that the decision was based upon a review of the entire file, including the reports from Drs. Rorick, Baron, and Graham. It explained that plaintiff was being denied benefits because the record did not contain any neurological or physical abnormalities or any objective findings that would support an impairment that precluded him from performing his job duties as of May 7, 2014. The letter explained his right to appeal, his right to submit additional medical evidence, and that he could receive free copies of all documents, records, and other information relevant to his claim for

benefits. Lastly, the final denial letter identified the relevant plan provisions and explained that

the substantial weight of all of the medical documentation supported the conclusion that

plaintiff's condition was not covered by the Plan. It also informed plaintiff that he could request

free copies of the documents and records that were considered in the benefits determination and

explained his right to file a civil action under ERISA. Taken together, these letters gave plaintiff

a consistent and sufficiently thorough explanation of why his claim was being denied such that

he would understand the defects he needed to cure and the process he needed to follow in order

to be entitled to benefits.

Plaintiff further argues that defendants' reliance on the review of an anonymous physician

from MRIoA deprived him of a full and fair review of his claim. He argues that "[t]he

thoroughness of the review by Defendants comes into question as they rely nearly exclusively on

the previously hidden file review by MRIoA.[7] The [independent medical examination] is not

even signed by a doctor, nor is there an actual examination." (Pl.s Br. at 22). As an initial matter,

plaintiffs' characterization that defendants' final denial is based "nearly exclusively" on the

report from the anonymous MRIoA physician is not supported by the record. As just noted,

defendants informed plaintiff that the denial was based on a review of the entire record;

moreover, the denial would have been supported by substantial evidence even without the

anonymous physician's review. With respect to plaintiff's objection that the anonymous

physician did not examine plaintiff, the Court has already addressed the defendants' decision to

_____

[7]     Plaintiff asserts that defendants intentionally withheld the MRIoA physician
report but provides no evidence of this other than the fact that it was not included
in the Administrative Record when defendants initially provided it to plaintiff in
November of 2015. But once defendants were aware of the omission, they
provided the report to plaintiff.

22

conduct a file review and concluded that it was not arbitrary and capricious. Finally, the fact that

the report is not signed by a doctor is immaterial. The report identifies the physician's

qualifications, and the denial letter informed plaintiff that "[his] identify may be forwarded to

[plaintiff] upon written request to the Plan Administrator." (AR 551). Plaintiff does not provide

any evidence that he submitted such a written request. *See Houser v. Alcoa, Inc. Long Term*

*Disability Plan*, No. CIV.A. 10 160, 2010 WL 5058310, at *11 12 (W.D. Pa. Dec. 6, 2010)

(rejecting claimant's argument that denial was arbitrary and capricious because administrator

relied in part on review by anonymous physician from MRIoA and noting that ERISA "does not

prohibit plans from consulting with an unidentified medical expert in connection with the grant

or denial of benefits"); *McGruder v. Eaton Corp. Short Term Disability Plan*, No. CIVA 3:06

418 CMC, 2006 WL 3042798, at *13) (finding that administrator's denial decision, which was

based in part on review by anonymous physician from MRIoA, was not arbitrary and capricious).

### D.  The Administrative Record

In his brief, plaintiff complains that defendants have not provided a complete

administrative record. As support, he notes that the record "has a number of omissions or

redacted pages." (Pl.'s Br. at 25) (citing pages 422, 430, 444, 451, and 820 of the record).

Plaintiff's argument is not well-taken. On March 23, 2016, plaintiff's counsel raised the concern

about these pages with defendants' counsel and asked defendants' counsel to provide the pages

in unredacted form or to provide a privilege log. On March 25, 2016, defendants' counsel

emailed plaintiffs' counsel a declaration  from Matthew Wicklander, the Assistant Vice President

of Operations and Client Services at Sedgwick, which states that no pages were redacted from

the administrative record. Specifically, Wicklander states: "I have reviewed pages 422, 430, 444,

23

451, and 820 of the Administrative Record.... The pages have not been redacted and no

information has otherwise been removed. The phrase 'Restricted Proprietary Information' is used

by Sedgwick on certain notifications. It is a legend to identify information restricted from further

disclosure; it does not indicate that information has been redacted or otherwise removed from the

document(s)." (Def.'s Mem. in Opp., Ex. A-4). Plaintiff offers no reason that the Court should

question the veracity of Wicklander's declaration, and the Court finds that the administrative

record is complete.

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Judgment on the Administrative

Record (Doc. 40) is GRANTED, and plaintiff's motion (Doc. 39) is DENIED. Plaintiff's Motion

for Leave to File Reply Brief (Doc. 45) is GRANTED, and Defendant's Motion to Strike (Doc.

46) is GRANTED.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/28/16

24